UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| RICHARD A. MILLER, SR., | ) | CASE NO. 1:06 CV 1461 |
| | ) | |
| Plaintiff, | ) | JUDGE ANN ALDRICH |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| ROYAL MANOR HEALTH CARE, INC., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On June 13, 2006, plaintiff pro se Richard A. Miller filed the above-captioned action under 42 U.S.C. § 1983, "42 U.S.C. § 2000d-Title VII - Discrimination, 28 U.S.C. § 1331, [and the] Social Security Act" against Royal Manor Health Care, Inc. ("Royal Manor Health"), Royal Manor Management, Inc. ("Royal Manor Management"), Royal Manor Management Chief Executive Officer Abraham Schwartz, Royal Manor Management Chief Executive Officer Sally Schwartz, Royal Manor Management Chief Operating Officer Victoria Pavel, Royal Manor Management Corporate Nurse Treva Boydelatour, Austinburg Rehabilitation and Nursing Center ("ARC") ARC Administrator N. Darlene McMunn fka Zigmont, ARC Medical Director Dr. Choong Kim, ARC Bariatric Program Director Dr. Eric Berko, ARC Director of Nursing Karen Sprinkle, ARC Director of Admissions Ann Schupska, ARC Social Worker Kathy Peterson, ARC 300 Corridor Unit

Manager Susan Drass, ARC Nurse Tina Root, ARC Nurse Jen Sharick, ARC Nurse Melissa Vosburg, ARC Nurse's Aide Lindsey Piper, ARC Patient David Smith, and ARC Patient Brian Parsons. In the complaint, plaintiff alleges the defendants have discriminated against him on the basis of his race. He seeks compensatory and punitive damages. Mr. Miller also filed an Application to Proceed In Forma Pauperis. That Application is granted.

## Background

Mr. Miller states that he is a 41 year old African American, morbidly obese male who is suffering from diabetes, high blood pressure, hypothyroidism, asthma, and lymph edema in his lower extremities. He was hospitalized in December 2005 in Burlington, North Carolina at which time it was decided that Mr. Miller would require continued skilled nursing upon release from the hospital. The hospital's care management team was unable to locate a bed for him in a local facility which offers bariatric treatment and a search for such a program was expanded to encompass other states. He claims contact was initially made with the Miller Health Center in Andover, Ohio, because it had been featured in a recent television documentary about bariatric treatment. The Miller Health Center could not offer Mr. Miller placement in its facility, but recommended ARC which he claims he was told was an "overflow facility." (Compl. at 4.) He was transferred to ARC on January 19, 2006. He claims he is the only African American at this facility.

Shortly after his arrival at ARC, Mr. Miller discovered that the bariatric program was not yet operational. He further claims that the facility lacked the equipment needed to move him around within the building which left him confined to his room, unable to participate in physical therapy and group activities. He contends this caused him to be anxious, and prompted him to eat more. Mr. Miller states he persuaded staff members to purchase candy from the vending machines

for him.  He received a letter from ARC Administrator Darlene McMunn fka Zigmont informing him that the Bariatric Treatment Unit would be operational in March 2006 and all residents participating in that program would be moved to the 300 corridor where the unit is located.  Mr. Miller was moved to the unit on March 6, 2006.

By this time, Mr. Miller had already begun to file grievances with the Ohio Department of Health regarding his treatment.  He disputed his care plan and his assessment, complained that the facility's equipment was inadequate, and expressed discontent that the staff failed to schedule him to see a podiatrist, failed to x-ray his hip, and failed to schedule an MRI to see if he had a brain tumor. The Department of Health visited ARC on March 13, 2006.  He claims that from this point on, Royal Manor Health, Royal Manor Management, Abraham Schwartz, Sally Schwartz, Victoria Pavel, Treva Boydelatour, and N. Darlene McMunn began to conspire to keep information from him.  He states that he was not given the bariatric program policy and the schedule of activities at the same time it was given to other bariatric patients.  He contends he received his information from the Program Director Dr. Eric Berko.  He indicates ARC staff recorded that he had manipulating behavior and stated in his file that if his complaints were not immediately met, he would call the ARC corporate offices.  He further indicates that after the Department of Health investigation, Ms. Boydelatour completed a mood behavior evaluation on him in which she noted that Mr. Miller kept a notebook of all his activities, called the corporate offices frequently, and notified the state if his demands were not met.  Mr. Miller does not agree that this behavior could be characterized as a mood or behavior disorder.

Mr. Miller alleges that ARC staff also began to document all of their interaction with him.  He claims he discovered that the nurse's aides were maintaining a private log to record all of

their conversations with him. When he questioned them about the log, ARC staff denied its existence. He contends that the staff members have made it a practice to always enter his room in groups of two or more. He claims no other bariatric patient is treated in this manner. Mr. Miller alleges Ms. Boydelatour placed information in his file based solely on the word of other staff members. He states he again contacted Royal Manor Health and Royal Manor Management regarding the "violation of resident rights" but has not received one written reply from them. He indicates that Ms. McMunn was terminated from her employment with ARC in May 2006. He states that Ms. McMunn entered his room and accused him of slandering her and stated that her attorney would be contacting him.

Several complaints against the nursing staff are listed in the pleading. Mr. Miller states that the nurses are not trained properly in the care of bariatric patients. He indicates that Tina Root encouraged nurse's aides to document their encounters with him. On at least two occasions, she noted what she considered to be inappropriate behavior by Mr. Miller. He states she arrived at this belief without conferring with him. He objects to a notation in his file by Nurse Vosburg who indicated he refused care and wanted to remain in his urine all night. He contends Nurse Sharick informed him that he could not have his medication because it had expired. He indicates he could have received it since it did not expire until that evening. He states she withheld his medication on another occasion in retaliation for filing a complaint against her. He claims Nurse's Aide Lindsay Piper borrowed money and a DVD from him. When she didn't return his property within a proper time frame, he confronted her and demanded she return it immediately. He claims Piper and Root are conspiring together to make it appear as though he was threatening Ms. Piper. Statements to that effect were recorded in his file.

Mr. Miller alleges that the defendants have conspired to remove him from the bariatric program. He claims that on April 13, 2006, he complained of dizziness. Dr. Kim came to the facility and discussed with Mr. Miller the possibility of seeking another bariatric program for him. Mr. Miller claims he agreed to consider the transfer but told Dr. Kim to discuss the options with him prior to making the arrangements. The following evening, Dr. Kim attempted to have Mr. Miller taken to the Cleveland Clinic emergency room. He states that the Cleveland Clinic referred him to the local hospital emergency room. Mr. Miller claims Dr. Kim did not discuss this transfer with him, and he refused the transport. He further claims that he was denied participation in a group session on May 11, 2006, because the other patients voted to exclude him. He contends that two patients, Brian Parsons and David Smith, threatened him. Mr. Miller indicates that although the staff were aware of the threats, they did not remove these individuals from the program. He claims instead that he was told to come to the group sessions to try to work out a resolution. He refused. On June 5, 2006, Ms. Boydelatour entered his room and informed him that he had been terminated from the bariatric treatment program because he did not sign the contract, did not record in the food log, and had not been weighed in two weeks. Mr. Miller contends he requested that the matter be brought before the Inter-Disciplinary team because this was a care plan change. He claims that to date, no meeting has been scheduled. Mr. Miller asserts that he has been treated differently from the other patients at ARC because of his race.

## **Analysis**

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim

upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

Mr. Miller first asserts equal protection claims against the defendants under 42 U.S.C. § 1983. To establish a prima facie case under 42 U.S.C. § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981). Generally, to be considered to have acted under color of state law, the defendant must be a state or local government official or employee. See Id. All of the defendants in this action, however, are private parties. A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974). There are no facts alleged in the pleading which even reasonably suggest that any of the defendants could be considered to be a state actor. Mr. Miller cannot maintain a cause of action against them under 42

---

[1] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

U.S.C. § 1983.

Mr. Miller also attempts to assert a claim under "42 U.S.C. § 2000d - Title VII - Discrimination." (Compl. at 3.)  Title VII, which is found in 42 U.S.C. § 2000e, provides a cause of action for employment discrimination.  It is not applicable to the facts presented in the complaint.  Title VI is found in 42 U.S.C. § 2000d.  Section 601 of Title VI provides that:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.  To state a private cause of action under Title VI, a plaintiff must allege not only that he was denied the benefits of a program because of his race, but that the entity involved receives federal assistance.  Grimes v. Superior Home Health Care of Middle Tennessee, Inc., 929 F. Supp. 1088, 1092 (M.D. Tenn. 1996); Parks v. Hillsdale Community Health Center, No. 1:98-CV-204, 1999 WL 893852, *4 (W.D.Mich. May 20, 1999); Luallen v. Guilford Health Care Center, No. 1:02CV00738, 2003 WL 23094916, *11 (M.D.N.C. Dec. 18, 2003); see Buchanan v. City of Bolivar, Tennessee, 99 F.3d 1352, 1356 (6th Cir. 1996); Farm Labor Organizing Committee v. Ohio State Highway Patrol, 95 F. Supp. 2d. 723, 741 (N.D. Ohio 2000).  A Title VI claim cannot be sustained when the plaintiff fails to allege that the program or activity receives federal funding.  Mr. Miller has not set forth any allegation in the complaint to reasonably suggest the program or activity receives federal financial assistance.  He therefore cannot proceed with a claim under Title VI.

Moreover, even if he had met basic notice pleading requirements for this cause of action, his claim could not be asserted against the individual defendants.  The entity receiving the federal funds is the proper defendant under Title VI.  Claims under Title VI cannot be asserted

against individual defendants. See Farm Labor Organizing Committee, 95 F.Supp.2d at 741-42; Farmer v. Ramsay, 41 F.Supp.2d 587, 592 (D.Md.1999); Lyons v. City of Philadelphia, No. 98-2662, 1998 WL 767451 at *3 (E.D.Pa.Nov. 4, 1998); Wright v. Butts, 953 F.Supp. 1343, 1350 (M.D.Ala.1996); Jackson v. Katy Independent School District, 951 F.Supp. 1293, 1298 (S.D.Tex.1996).

Finally, Mr. Miller attempts to assert a claim under the "Social Security Act." He provides no indication of how he may be entitled to relief under that statute and none is apparent from the face of the pleading. Principles requiring generous construction of pro se pleadings are not without limits. See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985). A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. See Schied v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988). District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. Beaudett, 775 F.2d at 1278. To do so would "require ...[the courts] to explore exhaustively all potential claims of a pro se plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Id. at 1278. Moreover, plaintiff's failure to identify a particular legal theory in his complaint places an unfair burden on the defendants to speculate on the potential claims that plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action. See Wells v. Brown, 891 F.2d at 594. Even liberally construed, the complaint does not sufficiently state a cause of action under the "Social Security Act."

**Conclusion**

Accordingly, Mr. Miller Application to Proceed <u>In Forma Pauperis</u> is granted and this action is dismissed pursuant to 28 U.S.C. § 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

   s/Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

Dated: <u>September 14, 2006</u>

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken <u>in forma pauperis</u> if the trial court certifies that it is not taken in good faith.